IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS E. ANDINO-OQUENDO,

**Plaintiff**,

v.                                        CIVIL NO. 18-1772 (RAM)

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

**Defendant.**

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is defendant Federal National Mortgage Association's ("Defendant") *Motion for Summary Judgment* ("*MSJ*"). (Docket No. 82). For the reasons set forth below, the Court finds that there is no genuine dispute as to any material fact and that Defendant is entitled to judgment as a matter of law. Thus, the *MSJ* is **GRANTED,** and this case is **DISMISSED WITH PREJUDICE.**

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This dispute arises from a real estate transaction between plaintiff Luis E. Andino-Oquendo ("Plaintiff") and Defendant. On September 26, 2012, Defendant sold to Plaintiff a property located in Dorado, Puerto Rico (the "Property"). Several years later, after making improvements to the house on the Property, Plaintiff put it up for sale and received an offer from a third party to purchase

the Property. However, Plaintiff alleges he could not sell the Property to the interested buyer because of issues with the title that are attributable to Defendant's failure to properly register certain deeds with the Puerto Rico Property Registry ("PRPR").

On October 16, 2018, Plaintiff initiated this action by filing a pro se complaint. (Docket No. 2). Plaintiff was subsequently appointed counsel, who filed the operative three-count *Amended Complaint*. (Docket No. 37). On September 14, 2021, Defendant filed the pending *MSJ*. (Docket No. 82). Plaintiff then filed an opposition to the *MSJ*, and Defendant filed a reply. (Docket Nos. 103; 115).

## II.   STANDARD OF REVIEW

Summary judgment is proper if the movant shows: (1) the absence of a genuine dispute as to any material fact; and (2) entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence about the fact is such that a reasonable jury could resolve the point in favor of" the nonmovant. Alicea v. Wilkie, 2020 WL 1547064, at *2 (D.P.R. 2020) (internal quotation marks and citation omitted). A fact is material only if it can alter the outcome of the suit under the governing law. *See* DLJ Mortg. Cap., Inc. v. Vazquez Perez, 2021 WL 3668241, at *2 (D.P.R. 2021) (internal quotation marks and citation omitted). "The nonmoving party may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that

a trialworthy issue persists." Robinson v. Town of Marshfield, 950 F.3d 21, 24 (1st Cir. 2020) (internal quotation marks and citation omitted).

Local Rule 56 also governs motions for summary judgment in this District. *See* L. CV. R. 56. Per this Rule, a nonmovant must admit, deny or qualify the facts supporting the summary judgment motion by referencing each paragraph of the movant's statement of material facts. Id. The movant may then file a reply statement of material facts, "which shall be limited to any additional fact submitted by the opposing party." Id. Adequately supported facts shall be deemed admitted unless controverted in the manner set forth in the local rule. *See* Vogel v. Universal Insurance Company, 2021 WL 1125015, at *2 (D.P.R. 2021) (internal quotation marks and citation omitted). Litigants ignore this Rule at their peril. Id.

### III.   FINDINGS OF FACT[1]

To make findings of fact, the Court reviewed Defendant's *Statement of Uncontested Facts* ("*SUMF*"); Plaintiff's *Statement of Uncontested Facts* ("*PSUMF*"); and Defendant's *Reply to Plaintiff's Opposing Statement of Material Facts in Support of His Opposition to Summary Judgment and Response to Plaintiff's Additional Relevant Facts*. (Docket Nos. 82-1; 103-1; 115-1). After crediting only statements of fact that are properly supported by the record,

---

[1] Later references to each Finding of Fact in this Opinion and Order are cited as follows: (Fact ¶ __).

uncontroverted, and material to the resolution of the *MSJ*, the Court makes these findings of fact.

1. On August 30, 2012, Plaintiff entered into a Purchase Option Contract (the "Option Contract") and a Real Estate Purchase Addendum (the "Addendum") with Defendant to acquire the Property. (Docket Nos. 82-1 ¶ 1; 103-1 at 9, ¶ 1; 82-2).

2. Plaintiff voluntarily signed both documents. (Docket Nos. 82-1 ¶ 1; 103-1 at 9, ¶ 1; 85-1).

3. In the Option Contract, Defendant agreed to "convey to [Plaintiff] good, legal, marketable, fee simple title" to the Property. (Docket Nos. 82-2 at 1; 103-1 at 16, ¶ 14).

4. In the Addendum, Plaintiff also agreed to waive "any claim arising from encroachments, easements, shortages in area or any other matter which would be disclosed or revealed by a survey or inspection of the property or search of public records." (Docket Nos. 82-1 ¶ 2; 82-2 at 9).

5. At the time the Option Contract and Addendum were signed, Defendant knew that the measurements of the Property as they appeared in the PRPR were incorrect. (Docket Nos. 103-1 at 10, ¶ 2; 115-1 at 11, ¶ 2).

6. The PRPR stated that the Property measured 913.8048 square meters, while the true measurement was 809.8878 square meters. (Docket Nos. 82-1 ¶ 4; 103-1 at 9, ¶ 2; 82-4).

7. To correct the discrepancy, on September 26, 2012, Defendant obtained deed of rectification of measurement number 167 (the "Rectification Deed") before Public Notary Jorge Colón Muntaner, which corrected the measurement of the Property to 809.8878 square meters. (Docket Nos. 82-1 ¶ 4; 103-1 at 9-10, ¶ 2; 82-4; 85-2).

8. Also on September 26, 2012, Plaintiff and Defendant voluntarily executed purchase and sale deed number 168 (the "Purchase and Sale Deed") before Public Notary Jorge Colón Muntaner, pursuant to which Plaintiff acquired the Property. (Docket Nos. 82-1 ¶ 5; 103-1 at 10, ¶ 3; 82-6).

9. The property was described as follows in the Purchase and Sale Deed:

> URBANA: Solar de ochocientos nueve punto ocho mil ochocientos setenta y ocho (809.8878) metros cuadrados, sita en el Barrio Higuillar del término municipal de Dorado, Puerto Rico, en lindes por el Norte, con ramal de la carretera seiscientos noventa y cuatro (694); por el Sur, con terrenos de Modesto Canino; por el Este, con un ramal de la carretera seiscientos noventa y cuatro (694); y por el Oeste, con terrenos de Reyes Canino.

(Docket Nos. 82-1 ¶ 6; 103-1 at 10, ¶ 4; 82-6 at 2).

10. This description in the Purchase and Sales Deed matches the description of the Property as it appears in the PRPR, except that the PRPR specifies that the Property includes

a one-story concrete house. (Docket Nos. 82-1 ¶ 7; 85-4; 123-1 at 3).

11. Plaintiff purchased the Property for the agreed-upon price of $85,000 and came into possession of the Property on September 26, 2012. (Docket Nos. 82-1 ¶¶ 9, 10; 103-1 at 10, ¶ 5).

12. Plaintiff bought the Property "as-is." (Docket Nos. 82-1 ¶ 12; 82-6 at 6).

13. Plaintiff has resided at the Property since September 26, 2012. (Docket Nos. 82-1 ¶ 10; 103-1 at 10, ¶ 5).

14. The Rectification Deed and Purchase and Sale Deed were filed with the PRPR on November 10, 2012. (Docket Nos. 82-1 ¶ 13; 103-1 at 10, ¶ 6; 85-2).

15. However, the Property Registrar returned the Rectification Deed, Purchase and Sale Deed, and File 49 to Plaintiff's mother, Nydva Oquendo, on March 22, 2016, with instructions to make specific corrections to the documents. (Docket Nos. 82-1 ¶ 14; 103-1 at 6, ¶ 14; 115-1 at 8, ¶ 14).

16. The parties were informed that the deeds were obstructed by a previously filed mortgage cancelation and instructed to provide the Property Registrar with a certified copy of a court judgment. (Docket Nos. 82-1 ¶ 15; 103-1 at 11, ¶ 7; 85-5).

17. Additionally, the parties were instructed to provide an additional document from ARPE indicating that their requested rectification was not a segregation of a different property. (Docket Nos. 82-1 ¶ 16; 103-1 at 11, ¶ 8; 85-5).

18. The parties obtained the requisite ARPE certification. (Docket Nos. 82-1 ¶ 17; 103-1 at 11, ¶ 9; 85-6).

19. The Rectification Deed and Purchase and Sale Deed were refiled with the PRPR on December 12, 2016. (Docket Nos. 82-1 ¶ 18; 103-1 at 11, ¶ 9; 85-7; 85-8).

20. Sometime between February and March 2017, Ms. Arleen M. Rivera-Ortiz ("Rivera") visited the Property and expressed interest in purchasing it. (Docket Nos. 82-1 ¶¶ 19-20; 103-1 at 11, ¶ 10).

21. By February 2017, Plaintiff was the title owner of the Property. (Docket Nos. 82-1 ¶ 22; 103-1 at 8, ¶ 22).

22. Rivera did not end up buying the Property. (Docket No. 123-3).

## IV. ANALYSIS

Having set out the findings of fact, the Court will address each of Plaintiff's three causes of action. Seeing as this is a diversity case, the Court will apply the substantive law of Puerto Rico. *See* Rivera-Marrero v. Presbyterian Cmty. Hosp., Inc., 2016

WL 7670044, at *1 (D.P.R. 2016) (quoting Summers v. Fin. Freedom Acquisition LLC, 807 F.3d 351, 354 (1st Cir. 2015)).

Additionally, the Court will limit its analysis to arguments and legal theories that were raised in the *Amended Complaint*, as it is well established that a plaintiff may not amend their complaint through their opposition to a motion for summary judgment. See Katz v. Belveron Real Est. Partners, LLC, 28 F.4th 300, 309 (1st Cir. 2022) (collecting cases).

### A. There Was No Breach of Contract

Plaintiff first alleges that Defendant breached its contractual duties "by not registering the [P]roperty in [P]laintiff's name at the PRPR." (Docket No. 37 at 3). Plaintiff accordingly seeks damages "pursuant to the Puerto Rico Civil Code." Id.

A breach of contract claim under Puerto Rico law has three elements: "(1) a valid contract; (2) a breach by one of the parties to the contract; and (3) resulting damages." Yacht Caribe Corp. v. Carver Yacht LLC, 270 F. Supp. 3d 547, 555 (D.P.R. 2017) (citations omitted). The parties do not dispute that they signed at least three valid contracts – the Option Contract, the Addendum, and the Purchase and Sale Deed. (Docket Nos. 82 at 7; 103 at 5). However, Defendant contends it did not breach any of these contracts and that Plaintiff therefore suffered no resulting damages. Defendant is correct.

The breach of contract claim cannot survive the pending *MSJ* for a simple reason: the record before the Court makes clear that Defendant *did* register deeds 167 and 168 with the PRPR in 2012. (Docket No. 37 ¶ 12; Fact ¶ 14). Additionally, when Defendant was alerted that certain errors with the deeds needed to be corrected in 2016, it promptly addressed those issues and refiled both deeds with the PRPR. (Fact ¶ 19). Plaintiff admitted that, once those deeds were resubmitted, he became the valid title owner of the Property. (Fact ¶ 21). Therefore, the Court does not see how Plaintiff could have suffered $85,000 in damages from not holding the legal title to the Property. (Docket No. 37 ¶¶ 21, 22) (asserting that Plaintiff suffered $85,000 in damages because Defendant allegedly did not provide legal title to Plaintiff). The allegations underlying Plaintiff's breach of contract claim are incompatible with the evidence in the record, and this cause of action is thus dismissed.

### B. Plaintiff Was Not Deceived Into Purchasing the Property

Plaintiff next seeks rescission of the parties' contracts because he was allegedly deceived into consenting to the terms of the agreements. (Docket No. 37 ¶¶ 16, 17, 23). Specifically, Plaintiff alleges he would not have purchased the Property had he known that: (1) "the plot of land was of a different size than that stipulated in the purchase deed," and (2) Defendant had no

intention of registering the Property in his name with the PRPR. Id. ¶ 17.

Under Puerto Rico law, deceit, or dolo, can exist "in the formation of a contract where a party obtains the consent of another through deceptive means[.]" Feliciano-Muñoz v. Rebarber-Ocasio, 970 F.3d 53, 62 (1st Cir. 2020) (internal quotation marks and citation omitted). Dolo is considered "grave" when it determines the consent of a party. Id. Dolo grave nullifies the contract. Id. Because dolo is not presumed, "the party alleging dolo bears the burden of proof." Burk v. Paulen, 100 F. Supp. 3d 126, 135 (D.P.R. 2015). "[A] plaintiff must sufficiently plead that the defendant acted with intentional fault or bad faith to deceive him when discussing the formation of an agreement between the parties." Carrero v. Molina Healthcare of Puerto Rico, Inc., 602 F. Supp. 3d 310, 313 (D.P.R. 2022) (internal quotation marks and citation omitted).

As an initial matter, the Court must discuss whether Plaintiff properly pled a dolo claim in the *Amended Complaint*. Generally, courts have recognized that, "[w]hile dolo and fraud are similar concepts, they are not one and the same." Id. Therefore, courts do not apply the heightened pleading requirements of Fed. R. Civ. P. 9(b) to strictly dolo claims. *See* id. (ruling that the Court need not subject the complaint to heightened scrutiny pursuant to Fed. R. Civ. P. 9(b) because the plaintiff "affirmatively rejected any

reading of the [c]omplaint that advanced a fraud claim") (citing Generadora De Electricidad Del Caribe, Inc. v. Foster Wheeler Corp., 92 F. Supp. 2d 8, 19 (D.P.R. 2000)). However, here, Plaintiff expressly invoked the word "fraud" when describing his dolo cause of action, clearly evincing an intent to plead a fraud claim. (Docket No. 37 ¶ 23). Nonetheless, as explained below, Plaintiff's second cause of action is controverted by the uncontested facts in the record. Thus, the Court need not determine whether to apply the heightened pleading standard, as this cause of action is deficient either way.

The Court will first address Plaintiff's second dolo theory, as its deficiencies have already been discussed in this Opinion and Order. (*See supra* § IV.A.). Simply put, Plaintiff cannot allege that Defendant deceived him into purchasing the Property by promising to register the Property in his name, because the record shows that Defendant *did* register the Property and thus transfer its title to Plaintiff. Id. Plaintiff admits that he has been the title owner of the Property since at least the end of 2016. (Facts ¶¶ 19, 21). Therefore, there is nothing in the record that supports the contention that Defendant had any hidden intention to sell Plaintiff the property without properly registering the sale.

Plaintiff's first dolo theory – which is predicated on the idea that Defendant misled Plaintiff regarding the size of the Property – is similarly unavailing, as the evidence in the record

shows that Plaintiff was informed of the Property's correct lot size before he purchased the Property. The Purchase and Sale Deed – which Plaintiff voluntarily signed before a public notary – stated that the Property had a lot size of 809.8878 square meters. (Facts ¶¶ 8, 9). That lot size matches the description of the Property in the PRPR. (Fact ¶ 10). Therefore, it is unclear how Plaintiff could have been deceived about the lot size when it was plainly written in the Purchase and Sale Deed he executed.

For these reasons, Plaintiff is not entitled to the rescission of any of his contracts with Defendant. Nor is he entitled to the return of his purchase price and related costs and fees.

### C. The Record Does Not Show That Defendant Acted Negligently

Finally, Plaintiff seeks damages pursuant to Article 1802 of the Puerto Rico Civil Code.[2] Article 1802 provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. "A plaintiff must prove three elements to support a claim for damages under Article 1802: 'first, proof of the reality of the damage suffered; second, a causal relation between the damage and the action or omission of another person; and third, said act or omission is negligent or wrongful.'" Muñiz-

---

[2] Because the events at issue occurred before the enactment of the new Civil Code, the applicable provisions are contained in the previous version of the Civil Code. See Fleming v. Robinson Aviation (RVA), Inc., 2021 WL 2346059, at *8 n.8 (D.P.R. 2021).

Olivari v. Stiefel Lab'ys, Inc., 441 F. App'x 4, 6 (1st Cir. 2011) (quoting Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1 (1994)). Damage includes "any material or moral loss suffered by a person, either in its natural rights or in its property or patrimony, brought about by violation of a legal provision and which is chargeable on another party." Id. (internal quotation marks and citation omitted).

Plaintiff contends that, despite Defendant's obligation to convey to him good, legal, marketable, fee simple title to the Property, Defendant negligently failed to: (1) properly register the Purchase and Sale Deed with the PRPR; and (2) correct certain errors that prevented the Rectification and Purchase and Sale Deeds from being registered with the PRPR. (Docket No. 37 ¶¶ 18-20). Plaintiff's alleged damages include $60,000 for his inability to sell the Property to Rivera and $50,000 for "intense emotional distress and injuries" allegedly caused by Defendant's negligence. Id. ¶¶ 24, 25. Plaintiff raises four particular errors with the Rectification and Purchase and Sale Deeds throughout his briefing that he attributes to Defendant's negligence. Each is addressed in turn below.

### 1. The Property Measurements

Plaintiff first contends that Defendant negligently recorded the wrong lot size for the Property with the PRPR. However, as already discussed in this Opinion and Order, this contention is

not supported by the record. (*See supra* § IV.B.). The record does establish that, at the time the parties signed the Option Contract and the Addendum, Defendant knew that the measurements of the Property as they appeared in the PRPR were incorrect. (Fact ¶ 5). However, to properly rectify the issue, Defendant filed the Rectification Deed with the PRPR on the same day it filed the Purchase and Sale Deed. (Facts ¶¶ 7, 14). The Property's measurements in the Rectification Deed match the measurements Plaintiff agreed to when signing the Purchase and Sale Deed. (Facts ¶¶ 7, 9). Moreover, those updated measurements are currently reflected in the PRPR's measurements of the Property. (Fact ¶ 10). Given these undisputed facts, the Court does not find that Defendant acted negligently. Defendant identified a discrepancy with the measurements of the Property before the parties executed the Purchase and Sale Deed and adequately and promptly rectified that issue.

  2. The Issues Identified by the Property Registrar

Second, the Court will address whether Defendant acted negligently in failing to anticipate and then address the issues with the Rectification and Purchase and Sale Deeds that prompted the Property Registrar to return them in 2016. As noted, it is undisputed that the originally filed Rectification and Purchase and Sale Deeds were returned to Plaintiff's mother in March 2016 with instructions on how to cure their deficiencies. (Fact ¶ 15).

Case 3:18-cv-01772-RAM   Document 126   Filed 02/27/23   Page 15 of 18

Civil No. 18-1772 (RAM)                                              15

The primary issue concerned a previously filed mortgage cancelation on the Property, which the PRPR needed additional documentation to address. (Fact ¶ 16). The PRPR also needed an additional document from ARPE. (Fact ¶ 17). While these issues undoubtedly existed, Plaintiff does not explain, and the record does not show, how the mere existence of the previously filed mortgage cancelation, and the failure to anticipate issues concerning it, constitutes negligence on Defendant's part. Additionally, the Court sees no reason why Defendant should be held responsible for the fact that it took the PRPR so long to raise the issues with the deeds, as Plaintiff has made no argument that Defendant is responsible for the PRPR's backlog.

Further, the Court sees no evidence of negligence in how Defendant handled the deeds once they were returned. The record establishes that Defendant was alerted to the issues on March 22, 2016. (Fact ¶ 15). By December 12, 2016, Defendant had obtained the necessary documents and refiled both deeds with the PRPR. (Fact ¶ 19). Plaintiff does not contend that Defendant acted negligently in how it went about addressing the identified issues.

Furthermore, even if there was evidence to support a finding that Defendant acted negligently with respect to the filing of the Rectification and Purchase and Sale Deeds, Plaintiff failed to tie that negligence to his alleged damages. It is undisputed that both deeds were resubmitted to the PRPR in December 2016. (Fact ¶ 19).

While Plaintiff asserts that he suffered damages due to his inability to sell the Property to Rivera, Rivera did not show interest in purchasing the property until February or March 2017. (Fact ¶ 20). By that point, Plaintiff does not dispute that he was the title owner of the Property. (Fact ¶ 21). Therefore, Plaintiff has failed to establish "a causal relation between the damage and the action or omission of" Defendant, which is one of the elements for a successful claim for damages under Article 1802. Muñiz-Olivari, 441 F. App'x at 6.

    3. The Purchase Price

Third, Plaintiff alleges that Defendant negligently recorded the wrong purchase price for the parties' transaction with the PRPR. (Docket No. 103-1 at 12, ¶ 12) ("The deed that [Defendant] presented has never been correct in the sales price of $85,000 instead listing the sales price as $76,500[.]"). However, the record evidence again contradicts Plaintiff's assertions. As with the Property measurements, the correct $85,000 purchase price clearly appears in the Purchase and Sale Deed that Plaintiff signed, and that Defendant filed with the PRPR. (Docket No. 82-6 at 3) ("The Seller hereby sells to THE BUYER the Property described above for a total amount of EIGHTY FIVE THOUSAND DOLLARS [$85,000][.]"). The Purchase and Sale Deed notes that $76,500 was paid at the time of sale but makes clear this was the remaining amount owed after Plaintiff had previously paid $8,500 towards the

purchase price. Id. While Plaintiff points to different amounts that appear in a title search and in Presentation Receipts, Defendant did not prepare those documents. Therefore, the evidence does not support the inference that *Defendant* negligently recorded an incorrect purchase price.

Further, Plaintiff makes no attempt to establish why it is *Defendant's* duty to correct the purchase price at this point, as *Plaintiff* is the undisputed title owner of the Property. Additionally, and perhaps even more importantly, Plaintiff does not explain why the incorrect purchase price on a title search and in the Presentation Receipt for the Purchase and Sale Deed prevented him from selling the Property to Rivera. Therefore, Plaintiff has failed to establish a legal duty, a negligent act, or causal damages with respect to the purchase price.

### 4. The Description of the House on the Property

The final discrepancy Plaintiff identifies is in the description of the house on the Property. He points to the property title, which states that there is a single-story house with three bedrooms and one bathroom on the Property. (Docket Nos. 103 at 14; 123-1). However, Plaintiff asserts in the *PSUMF* that the Property actually has a two-story home with additional rooms. (Docket No. 103-1 at 12, ¶ 12). While Plaintiff may have identified an ongoing discrepancy in the property records, this negligence claim suffers the same fate as the preceding one. Plaintiff again does not

explain why: (1) this discrepancy is attributable to any errors made by Defendant, (2) Plaintiff has not or cannot rectify this issue on his own as the current owner of the Property, or (3) this problem impeded Defendant from selling the Property to Rivera. Therefore, again, in the absence of evidence or substantiated arguments in support of this claim, the Court cannot find that Defendant was negligent in failing to correct the description of the structure on the Property with the PRPR or that Plaintiff has suffered damages as a direct cause of this issue.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff has failed to make a sufficient showing to establish the existence of essential elements of his claims. Therefore, Fed. R. Civ. P. 56 mandates the entry of summary judgment. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Defendant's *MSJ* at Docket No. 82 is **GRANTED,** and this action is **DISMISSED WITH PREJUDICE IN ITS ENTIRETY.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of February 2023.

S/RAÚL M. ARIAS-MARXUACH
UNITED STATES DISTRICT JUDGE